DORIS EARLINE CULBERTSON, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Culbertson v. Commissioner
Docket No. 24484-84.
United States Tax Court
T.C. Memo 1987-283; 1987 Tax Ct. Memo LEXIS 283; 53 T.C.M. (CCH) 1025; T.C.M. (RIA) 87283; June 9, 1987. Mark Culbertson (Specially Recognized), for the petitioner. Pamela R. Martin and Peter M. Ritteman, for the respondent. GERBER
MEMORANDUM FINDINGS OF FACT AND OPINION GERBER, Judge: Respondent, by a statutory notice of deficiency, dated April 13, 1984, determined, for the 1980 taxable year, a $4,910.90 income tax deficiency and a $2,455.45 addition to tax under section 6653(b). [1] The issues presented in this case are: (1) Whether petitioner is entitled to any charitable deductions in connection with a "Universal Life Church" or the "Miletus Church;" and (2) whether a part of the underpayment of tax was due to fraud with the intent to evade payment of tax. *284 Doris E. Culbertson (petitioner) did not appear at trial and sent her husband to represent her interest in this matter. [2] Petitioner resided in Warren, Michigan, at the time of filing the petition herein. Petitioner and Mark Culbertson (husband) were married during all pertinent times in issue and resided together in a home located at 14743 Peck, Warren, Michigan. Petitioner filed a 1980 Federal income tax return under the filing status "Married filing separate return." She reported $21,550 in wages from employment as a teacher in the Macomb County school system. Petitioner claimed $16,032 in deductions, $10,775 of which was shown, without further explanation, as a contribution (charitable) carryover *285 from other years. The deductions, along with a $400 child care credit, reduced petitioner's total tax liability to $172 for which no withholding prepayments credits were available. Petitioner's and husband's prior filing history becomes important in connection with the claimed contribution carryover. Essentially, petitioner and husband, during 1977, engaged in the now familiar pattern of forming a church (sometimes called "mail order churches") to which they purportedly contributed their residence, its contents and other personal property, and claimed deductions for the alleged contributions of these items. In connection with the formation of their "church," petitioner and husband claimed $11,900 of "cash" contributions on their joint 1977 Federal income tax return, which, along with other deductions, resulted in a $3,211 tax liability on $35,733 of reported income. Following the same pattern for 1978, $16,550 of "cash" contributions were claimed, which, along with other deductions, resulted in a $1,190 tax liability on $36,450 of reported income. There was no further explanation of the "contribution" on the original 1977 and 1978 income tax returns. Petitioner and husband filed *286 amended 1977 and 1978 joint Federal income tax returns, dated in December 1981, which changed the category of contribution from "cash" to "other than cash" and increased the 1977 claimed contribution deduction from $11,900 to $14,000. The following explanation was attached to the amended 1977 return: The contribution was made to Heritage Hills Fellowship of the Miletus Church, Box 117, Cross Plains Texas. 76443 The property consisted of about 43 acres of rural undeveloped land costing $14,000, which was purchased under divine leadership for the purposes of developing a Christian teaching, preaching and retreat ministry on. The land was purchased during 1976 and was given to Heritage Hills Fellowship as a legitimate means of expressing our desire to use the land expressly for religious purposes, and to develop a Christian ministry on said land upon the proper timing and divine leadership. No capital gain was included in the amount claimed as a contribution. The actual cash cost is the specific amount claimed as a tax deduction. By a document dated March 1982, petitioner and husband again amended their 1978 return attaching a similar statement as had been attached to their *287 "1977 amendment" stating that they contributed a Dodge Sportsman Maxiwagon costing $8,270 and what appears to be a household of furniture, which they valued at $8,280, to the Miletus Church. During August 1982 petitioner and husband again amended their 1977 and 1978 joint returns by changing the $14,000 "other than cash" contribution to $1,000 "cash" and $13,000 "carryover from prior years" contributions for 1977 and showing $16,000 as a "carryover from prior years" for 1978, without any explanation for the changes. Petitioner filed a 1979 return showing "Married filing separate return" status and reporting $2,000 in "cash" contributions, which, along with other deductions and credits, reduced her tax liability to zero. By a document dated December 1981 she amended the 1979 return by changing the category of contribution from "cash" to "carryover from prior years." For 1981 and 1982 petitioner and husband began again to file joint returns and claimed contribution carryovers from prior years of $24,700 and $22,100, respectively. During 1981 and 1982 petitioner and husband reduced more than $40,000 of wage income in each year by the alleged carryover contributions to a point *288 where their joint tax liability was reduced to $724 and $380. Petitioner and husband called their church "The Heritage Hills Fellowship Christian Church" which they contend was located at the same address as their residence. Neither petitioner nor husband have shown that they are ministers, ordained or otherwise. Petitioner's neighbors were not aware of a church or religious activities at their 14743 Peck residence during the period in question. Petitioner, during 1980, was an active member of the Dequindre Road Baptist Church and attended services on most Sundays, with the exception of illness and vacations. Petitioner also taught classes at the Dequindre Road Baptist Church. Petitioner and husband were uncooperative with respondent's agents during the examination of their income tax liability and it was necessary to resort to court enforcement of summonses to obtain financial records. Petitioner bears the burden of establishing that she is entitled to the claimed contribution for the 1980 taxable year. ; Rule 142. Furthermore, she must establish her right to and the amount of the claimed deduction. . *289 Petitioner has not offered evidence which would sustain her burden of proof or establish her right to and the amount of the contribution deduction for 1980. [3] We accordingly hold that petitioner is not entitled to any amount of the $10,775 contribution deduction claimed for her 1980 taxable year. We next consider whether respondent correctly determined that petitioner *290 should be subject to an addition to tax under section 6653(b) because a part of the underpayment was due to fraud. Respondent bears the burden of proving fraud and must do so by clear and convincing evidence. ; sec. 7454(a); Rule 142(b). Respondent contends that petitioner has intentionally overstated her contribution deductions and engaged in a pattern of deception and uncooperativeness with the intent to "falsely and fraudulently evade payment of her Federal income tax liability for the year 1980." Petitioner contends, [4] in essence, that her "church" cannot be questioned by respondent and that respondent is required to show that it is not a church, which cannot be accomplished by means of hearsay. A fraudulent understatement (and resulting underpayment) may be *291 accomplished by means of overstated deductions. . The existence of fraud is a question of fact to be considered in light of the entire record, , affd. without published opinion , and may be inferred from circumstantial evidence. ; Petitioner has engaged in a continuous pattern of activity reflecting an intent to understate her tax liability by claiming contribution deductions which were without substance in law or fact. Although petitioner's and husband's numerous amendments of their returns prior to 1980 seem somewhat irregular and inconsistent, in each instance petitioner has sought to reduce her tax liability by means of alleged contributions to a "church" which has not been shown to exist and if it did, has merged with petitioner's secular life as an impermissible transmutation of the commercial and the ecclesiastical. , *292 affd. without published opinion . "It is hard to believe any individual * * * could honestly believe that he could escape liability for income taxation and still enjoy unfettered use of all the income he received by so simple a step as the creation of the 'church.'" , affd. . Petitioner was a regular and active member of a church in her community and even taught at the church school. The minister and some parishioners were called as witnesses by respondent. All of the witnesses confirmed the regular and active membership of petitioner in the community church. It is hard to believe that she gave almost everything she owned to the "church" that she and her husband created and claimed no contributions to the community church. [5] We find the financial arrangements, stationary and other church-type paraphernalia as further attempts by petitioner to create the illusion of a church. The cumulative total of contribution deductions claimed by petitioner and by petitioner and husband jointly for the six-year period reflected by the returns *293 in evidence totals at least $90,125. Petitioner's choice to hide behind the facade of a "manufactured" religious organization to evade the payment of tax is, coupled with the other facts in this record, fraudulent. Petitioner's actions are disruptive to a system that guarantees constitutional freedom of religion. Petitioner has attempted to use this constitutional guarantee as a sword to evade payment of tax, rather than a shield permitting the free exercise of her religion. To reflect the foregoing, A decision will be entered for the respondent.
Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended and appropriate to the year in question and all rule references are to this Court's Rules of Practice and Procedure.↩
2. Petitioner's husband (Mark Culbertson) appeared on behalf of his wife and advised that he was authorized to "represent" petitioner. When asked if petitioner had any objection to the commencement of the trial, her husband stated, "No, she wants it over with. She told me, get it over with today." Although a joint return was not filed, we permitted petitioner's husband to assist her by offering documentary evidence and proposing questions for witnesses offered by respondent.↩
3. Petitioner and husband opened a checking account in the name of "The Heritage Hills Fellowship Christian Church" of which they were signatories. Bank statements and various canceled checks were offered in evidence, but there is no discernible pattern to this evidence or from which we could determine the significance of these financial documents or their probative value. Due to petitioner's and husband's numerous amendments to prior years' returns and the claim that the 1980 contribution deduction was attributable to a carryover, we remain unsure whether petitioner relies on these checks as evidence of 1980 or prior years' cash contributions. In any event, petitioner has not provided sufficient evidence or explanation to substantiate either cash or other than cash contributions either in 1980 or any prior years.↩
4. Petitioner did not file a post-trial brief, but submitted, through her husband, a document entitled "Petitioner's Closing Arguments." The content of this document is a rambling narrative and somewhat incoherent presentation of petitioner's position. To the extent that facts are therein alleged, they remain unsupported by the record in this case.↩
5. None of the income tax returns in evidence reflect any contributions to the Dequindre Road Baptist Church in Warren, Michigan.↩